UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DONNA M. RIMMEN,

                              Plaintiff,

           -vs-                                          05-CV-474C

JO ANNE B. BARNHART,
Commissioner of Social Security,

                              Defendant.

---

Plaintiff Donna M. Rimmen initiated this action pursuant to section 405(g) of the Social Security Act, 42 U.S.C. § 405(g), to review the final determination of the Commissioner of Social Security (the "Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Commissioner has filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Item 5), and plaintiff has filed a cross-motion for judgment on the pleadings (Item 8). For the following reasons, the Commissioner's motion is granted, and plaintiff's cross-motion is denied.

## BACKGROUND

Plaintiff was born on October 10, 1952 (Tr. 40).[1] She applied for DIB and SSDI in October 2002, alleging disability since 1997 due to migraines, fibromyalgia, depression,

---

[1] References preceded by "Tr." are to page numbers of the transcript of the administrative record, filed by defendant as part of the answer to the complaint.

anxiety, fatigue, and hand pain (Tr. 40-42, 156-58).[2] Her applications were denied at the initial level of agency review (Tr. 29-32). Plaintiff requested a hearing, which took place on October 4, 2004 before ALJ William J. Reddy (Tr. 159-80). Plaintiff appeared and testified at the hearing and was represented by counsel.

In a decision dated October 29, 2004, ALJ Reddy found that plaintiff was not disabled within the meaning of the Social Security Act (Tr. 11-18). After outlining the sequential evaluation process set forth in the Social Security Administration Regulations (*see* 20 C.F.R. §§ 404.1520, 416.920), the ALJ reviewed the medical evidence and determined that plaintiff's impairments were not severe enough to significantly limit her ability to perform basic work-related activities. The ALJ found no objective medical evidence or other relevant information (such as hospital or doctor's office records showing significant active treatment, or any medical opinions as to her physical or mental ability to do basic work activities) to corroborate plaintiff's claim that her impairments prevented her from working (Tr. 17-18). The ALJ's decision became the Commissioner's final determination on May 19, 2005, when the Appeals Council denied plaintiff's request for review (Tr. 4-6).

Plaintiff then filed this action on July 7, 2005 pursuant to the judicial review provision of 42 U.S.C. § 405(g). The Commissioner moves for judgment on the pleadings on the ground that the ALJ's determination must be upheld because it is supported by substantial evidence in the record (*see* Item 6). Plaintiff also seeks judgment on the pleadings,

---

[2]Plaintiff filed a previous application for DIB, which was denied on December 21, 1998, after a hearing before an Administrative Law Judge. Plaintiff did not appeal this denial (Tr. 15, 62-63), and it is not at issue here.

arguing that her case should be remanded to the Commissioner for further proceedings because the ALJ failed to fully and fairly develop the record, and failed to properly assess plaintiff's credibility with respect to her subjective allegations of pain and physical limitations (*see* Item 8).

For the reasons that follow, the court finds that the ALJ adequately discharged his duty to develop the record, and properly assessed plaintiff's credibility, within the requirements established by the statute, Regulations, and interpretive case law. Accordingly, the Commissioner's motion for judgment on the pleadings is granted, and plaintiff's cross-motion for judgment on the pleadings is denied.

## **DISCUSSION**

**I.    Scope of Judicial Review**

The Social Security Act states that upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-72 (2d Cir. 1999). Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try a case *de novo* or substitute its findings for those of the Commissioner. *Richardson*, 402 U.S. at 401. The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Sample v. Schweiker*, 694 F.2d

639, 642 (9th Cir. 1982), *quoted in Winkelsas v. Apfel*, 2000 WL 575513, at *2 (W.D.N.Y. February 14, 2000).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis. 1976), *quoted in Gartmann v. Secretary of Health and Human Services*, 633 F. Supp. 671, 680 (E.D.N.Y. 1986). The Commissioner's determination cannot be upheld when it is based on an erroneous view of the law that improperly disregards highly probative evidence. *Tejada*, 167 F.3d at 773.

II.     **Standard for Determining Eligibility for Benefits**

To be eligible for DIB or SSI under the Social Security Act, plaintiff must show that she suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .," 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A), and is "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).

The Regulations establish a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits. *See* 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity. If the claimant is not, the ALJ must decide if the

claimant has a "severe" impairment, which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c), 426.920(c). If the claimant's impairment is severe, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings. If the impairment meets or equals a listed impairment, the claimant will be found to be disabled. If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant is capable of performing his or her past relevant work. Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing other work which exists in the national economy, considering the claimant's age, education, past work experience, and residual functional capacity. *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Reyes v. Massanari*, 2002 WL 856459, at *3 (S.D.N.Y. April 2, 2002).

In this case, the ALJ first determined that plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability in 1997 (Tr. 15). Upon review of plaintiff's medical records and in accordance with the second step of the sequential evaluation, the ALJ found that plaintiff suffered from medically determinable neck, shoulder, and upper back problems, along with hypertension and depression. However, the ALJ found no objective medical evidence to corroborate plaintiff's claim that these impairments significantly limited her ability to perform basic work-related activities (Tr. 17). Considering plaintiff's "subjective allegations weighed against the lack of medical evidence and other relevant information bearing on the issue of credibility" (*id.*), the ALJ found that plaintiff's impairments did not result in the degree of functional limitation alleged.

Accordingly, the ALJ determined that plaintiff's impairments were "non-severe",[3] and that it was unnecessary to continue further with the sequential evaluation (*id.*).

In her motion for judgment on the pleadings, plaintiff seeks a remand for further consideration of her claim on the grounds that (1) the ALJ failed to discharge his duty to fully develop the record, and (2) the ALJ failed to properly assess plaintiff's credibility. Each of these contentions is addressed in turn.

### III.    Duty to Develop the Record

Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to fully and fairly develop the administrative record. *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citing *Echevarria v. Secretary of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982). This duty exists even when, as in this case, the claimant is represented by counsel. *Id.* (citing *Baker v. Bowen*, 886 F.2d 289, 292 n. 1 (10th Cir. 1989)).

The Regulations further outline the scope of this duty by providing that, "[b]efore we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application . . . [and] will make every reasonable effort to help you get medical reports from

---

[3] Social Security Ruling SSR 96-3p (cited by ALJ Reddy in his October 29, 2004 decision) provides, in pertinent part:

> At step 2 of the sequential evaluation process, an impairment or combination of impairments is considered "severe" if it significantly limits an individual's physical or mental abilities to do basic work activities; an impairment(s) that is "not severe" must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.

SSR 96-3p, 1996 WL 374181 (S.S.A.), at *1.

your own medical sources when you give us permission to request the reports." 20 C.F.R. §§ 404.1512(d), 416.912(d). Further, "[w]hen the evidence we receive from your treating physician . . . or other medical source is inadequate for us to determine whether you are disabled, . . . [w]e will first recontact your treating physician. . . or other medical source to determine whether the additional information we need is readily available." 20 C.F.R. §§ 404.1512(e), 416.912(e); *see also Perez*, 77 F.3d at 47.

Plaintiff argues that the ALJ did not obtain all pertinent treatment records from Dr. Robert Bull, her treating physician since 1992. However, the record reflects that the agency contacted Dr. Bull on January 14, 2003, with follow-up contact on January 27, 2003 (Tr. 181). As a result of this contact, Dr. Bull submitted a report in March 2003 (Tr. 92-101; 181), which was reviewed by the ALJ in making his determination (*see* Tr. 16).

Dr. Bull reported that he first saw plaintiff in 1995, and last saw her in February 2003 (Tr. 92). His treating diagnoses were fibromyalgia, migraine headaches, and contracture in both hands, with current symptoms of severe joint pain, severe neck pain, and severe contracture causing pain in both hands (*id.*). He reported that plaintiff had intermittent depression due to chronic illness and environmental factors, but displayed no behavior suggestive of any significant psychiatric disorder (Tr. 93). Mental status was assessed as normal (Tr. 96).

Dr. Bull observed that plaintiff's gait exhibited no significant abnormality (Tr. 94, 95). Cranial nerves were within normal limits, and deep tendon reflexes were also normal (Tr. 94). Plaintiff's upper extremity motor strength was less than in her lower extremities (Tr. 95). Her grip strength, rapid alternating hand and finger movements, and fine manipulation were indicated to be "abnormal," but there were no indications of other abnormal

movements (Tr. 96). Sensory examination was normal throughout (*id.*). Dr. Bull indicated that plaintiff could stand and/or walk up to six hours per day (Tr. 97), and could sit for up to six hours per day as well (Tr. 98). Her ability to push and/or pull was limited to an unspecified degree (*id.*). Dr. Bull provided no further opinion as to plaintiff's functional capacity to perform work-related activities, and recommended an independent medical examination (*id.*).

On March 12, 2003, plaintiff was seen by Dr. Steven Dina for a consultative examination (Tr. 109-12). X-rays of plaintiff's left shoulder and cervical spine were normal (Tr. 111, 113). Plaintiff stated that she was able to cook, clean, shop for food, manage money, and handle her personal care activities (Tr. 110). Upon examination, she appeared to be in no acute distress. She exhibited a normal gait and stance, and could walk on heels and toes without difficulty. She was able to get on and off the examining table without help, and could rise from a chair without difficulty. Physical examination was completely within normal limits (Tr. 110-11). Strength was full (5/5) in both upper and lower extremities, with full range of motion in her shoulders, elbows, forearms, and wrists bilaterally (Tr. 111). Dr. Dina found no evidence of any contractures, atrophy, or sensory deficits. Fine motor activity and grip strength were normal (*id.*). Dr. Dina stated that plaintiff had "subjective complaints more than she has objective findings" (Tr. 112), and concluded that based upon the results of the consultative examination, plaintiff had no functional limitations (*id.*).

Plaintiff was also seen on March 12, 2003, by Dr. Thomas Dickinson for a consultative psychological examination (Tr. 102-08). Mental status examination revealed no serious depression, anxiety, negativism, suspiciousness, or significant emotional

-8-

distress (Tr. 106). Dr. Dickinson concluded that plaintiff's overall mental functioning was in the average range (*id.*). His diagnosis was adjustment disorder with mixed anxiety and depression (Tr. 107).

To the extent plaintiff alleges that the ALJ should have recontacted Dr. Bull for more information, the Regulations provide that recontact of a medical source is required only when the evidence received from the source is inadequate for the Commissioner to determine whether plaintiff is disabled. 20 C.F.R. §§ 404.1512(e), 416.912(e). Even if evidence in a claimant's case record is inconsistent with other evidence or is internally inconsistent, the ALJ is required to recontact medical sources to obtain additional evidence only if the ALJ cannot decide whether or not a claimant is disabled based on the existing evidence. 20 C.F.R. §§ 404.1527(c), 416.917(c). If existing reports from medical sources are adequate to demonstrate that the claimant is not disabled, the ALJ need not recontact the treating physician or other sources to obtain additional information. *Perez*, 77 F.3d at 47-48.

Furthermore, plaintiff has made no showing to suggest that an effort to recontact Dr. Bull would have been fruitful. In this regard, the hearing transcript indicates that the ALJ discussed with counsel the submission of additional medical records in plaintiff's possession which had not been made part of the record (Tr. 162). This submission contained no additional reports or information from Dr. Bull. Instead, plaintiff submitted reports from Drs. John Noe, Brian Block, and H. Roy Silvers dated between June 1991 and March 1994 (Tr. 149-54), and the ALJ received and considered this evidence as part of the record relied upon in rendering his decision (*see* Tr. 16). Plaintiff also testified at the hearing that she was not undergoing any particular type of treatment by Dr. Bull at the time

other than receiving pain medication (Tr. 164-166), and that she had "never been anywhere to get anything done" because she does not have health insurance (Tr. 165). Considering this testimony, and considering the nature of the post-hearing submissions as well as the information provided by Dr. Bull in his March 2003 report, it was reasonable for the ALJ to conclude that the record was complete at the time he rendered his hearing determination without the need to recontact Dr. Bull or any other medical source.

Based on this analysis, the court finds that ALJ Reddy adequately discharged his duty to develop plaintiff's medical history for the 12 months preceding the filing of her application. Accordingly, plaintiff is not entitled to a remand on this ground.

## IV.     Assessment of Credibility

Plaintiff also contends that the ALJ failed to properly assess plaintiff's credibility with respect to her subjective allegations of pain and physical limitations. The Regulations require that when assessing a claimant's credibility, the ALJ must consider various factors, including (i) the claimant's daily activities; (ii) the location, duration, frequency, and intensity of pain; (iii) the type, dosage, effectiveness, and side effects of medication; and (iv) other treatment that relieves pain. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *Crowley v. Barnhart*, 220 F. Supp. 2d 176, 180 (W.D.N.Y. 2002); *see also Mimes v. Heckler*, 750 F.2d 180, 187 (2d Cir. 1984) (while ALJ has discretion to evaluate claimant's credibility and arrive at an independent judgment regarding subjective complaints of pain, he must do so in light of medical findings and other evidence regarding true extent of pain alleged). "The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision," SSR 96-7p, 1996 WL 374186 (S.S.A.), at *4, and the ALJ may

not disregard a claimant's allegations concerning the severity of her symptoms "solely because they are not substantiated by objective medical evidence." *Id.* at \*6. Rather, the lack of objective medical evidence is one of the factors to be considered in evaluating a claimant's credibility, along with those outlined above. *Perez v. Barnhart*, 440 F. Supp. 2d 229, 234 (W.D.N.Y. 2006) (citing *Curran-Kicksey v. Barnhart*, 315 F.3d 964, 968 (8th Cir. 2003)).

In sum, the ALJ may properly reject a claimant's subjective complaints after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must do so explicitly and set forth his reasons with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence. *See Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999); *Jordan v. Apfel*, 192 F. Supp. 2d 8, 13-14 (W.D.N.Y. 2001).

In this case, the hearing determination reflects that ALJ Reddy considered plaintiff's testimony regarding her ability to engage in daily activities (such as doing the laundry, grocery shopping, and other household chores), and her ability to lift, stand, and sit (*see* Tr. 17). The ALJ also considered the diagnostic imaging and physical and mental function assessments in the record, all of which reported findings within normal limits (*see* Tr. 16-17). He also noted the lack of any records of hospitalizations or significant active medical treatment other than routine office visits, and the lack of any indication of changes in her prescribed medication reflective of an uncontrolled medical condition (Tr. 17). Based on this review of the record, the ALJ stated:

> While the [ALJ] believes that the claimant does have symptoms, possibly resulting in some limitation of function, it is not to the extent that the

claimant alleges. There are no medical statements that indicate that the claimant's impairments significantly limit the claimant's physical or mental ability to do basic work activities. Therefore, based upon a consideration of the subjective allegations weighed against the lack of medical evidence and other relevant information bearing on the issue of credibility, the [ALJ] finds that the claimant's assertions concerning the severity of her impairments, and their impact on her ability to work, are not substantiated by the record as a whole.

(*Id.*).

Upon review of this determination in light of the regulatory and case law standards discussed above, the court finds that the ALJ properly assessed plaintiff's credibility with respect to her subjective allegations of pain and other limitations of functional capacity. Accordingly, plaintiff is not entitled to a remand on this ground.

## **CONCLUSION**

Based on the foregoing analysis, and after a full review of the record, the court concludes that the ALJ's determination is supported by substantial evidence in the record, and was based on an appropriate application of the legal standards for discharging the affirmative obligation to fully and fairly develop the administrative record and for assessing a claimant's credibility. Accordingly, the Commissioner's motion for judgment on the pleadings (Item 5) is granted, plaintiff's cross-motion for judgment on the pleadings (Item 8) is denied, and the case is dismissed.

The Clerk of the Court is directed to enter judgment for the Commissioner.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: March  24 , 2007
p:\opinions\05-474.mar707